The opinion of the court was delivered by
Egan, J.
Beatty, alias Brown,,one of the accused, was indicted, tried, *1267 and found guilty of murder without capital punishment, whereupon he was sentenced to imprisonment for life in the Penitentiary. He has appealed. The case is before us on three bills of exception and a motion for new trial. The first bill was to the reception of evidence to show that the accused a few nights before the day set for trial broke jail and attempted to escape from the parish prison. On behalf of the prisoner it is urged that'to be admissible the evidence must be of an attempt to ■escape immediately succeeding the crime charged. Attempts to escape on the part of one accused of crime are not of themselves sufficient to authorize conviction, but if shown lend a strong presumption of guilt, unless otherwise explained. They'are classed with other ex post facto indications of mental emotion, and are receivable in evidence, but are to be weighed in connection with the surrounding circumstances, and the time at which the attempt is made is not material except as going to show the animus of the accused. The usual rule is laid down in Wharton’s Am. Crim. Law, sec. 714, and we have been referred to no authority limiting it. This bill was not well taken.
The second bill is to the reception of the evidence of one Madden to discredit the testimony of Louisa Brown, a witness for the accused, by showing that she had made other and contradictory statements at •another time, on the ground that the witnesses for the State had been placed under the rule and not permitted to remain in court during the •giving in of testimony by other witnesses, and that Madden’s name was not furnished the defendant, nor had he been put under the rule, but was present in court while Louisa Brown was testifying. The district jjudge states that Madden’s evidence was offered and received only as -to the contradictory statements made by the defendant’s witnesses at ••another time. For that purpose it was receivable. Waterman’s Crim. Dig. p. 607, sec. 189, and authorities cited; 1st G-reenleaf Evidence, pair. 432, note 2. This bill was not well taken.
The third bill of exceptions is to the reception of the testimony of Gilbert, a witness, whose name had been furnished to the accused, and who had been under the rule, but who, after having testified on behalf of the State, was permitted • to remain in the court when Louisa Hrown, defendant’s witness, was testifying. As we understand from the bill the evidence of this witness was offered and received for the same purpose with that of the witness Madden. The same principle therefore ■applies, as the evidence related only to discrediting the defendant’s witness. This bill was not well taken.
The fourth bill of exceptions is to the refusal of the district judge to receive evidence in-support of one of the grounds of motion for new trial of the statements óf Wallace, one of the jurors, made on the street in th.e presence of several persons, after the verdict had been rendered, *1268 to the effect that when he first went into the jury-room he was in favor of acquitting the accused, and that after he had made that known, one of the jurors said to him, “If you-will say ‘guilty’ I will give you one dollar and a half and a good bed to-night;” and he then agreed to find the accused guilty. It is well settled that a- juror will not be allowed to testify to impeach his own verdict or to show misconduct in the jury with that view. A fortiori, then, will not hearsay testimony of his unsworn statements to other persons be received for that purpose. Wharton’s Am. Crim. Law, secs. 3155-6; Waterman’s Crim. Dig., p. 456, sec-172, and authority cited. This bill was not well taken.
The motion for new trial is upon two grounds, one of which is the alleged misconduct of the jury in the manner attempted to be shown by evidence of the statements of the juror Wallace, already discussed-Of this it may be remarked that we have nothing before us except the affidavit of the accused appended to the motion for new trial, and we can not interfere on this ground with- the discretion of the district-judge. The other ground set up-in-the motion for new trial is “ that on the night of Friday, the tenth of May, 1878, and after the jury had retired to consult on their verdict,-and about the hour of ten o’clock of the same night, the entire jury, accompanied by the deputy sheriff in charge of the jury, and while they were under deliberation, retired to a drinking saloon on DeSiard street, in- the city of Monroe, about five or six squares from the court-house, without the order of court, and there partook of intoxicating liquors, the bill of which was paid by one of the jurors.” This, if true, was certainly a very gross irregularity on the part both of the officer in charge and of the jurors themselves, and one for which all should have been punished by the district judge if the facts were made known to him. We learn from a statement by the court in the record that his “ instructions to the sheriff after the trial of this case had been concluded were to take charge of the jury and not allow them to separate, and to provide such refreshments as were necessary.”' These instructions were proper and usual, and if any such loose practice prevails among the officers or jurors of his district as is charged, it would be well for the judge to put a stop to it in future and to charge officers and jurors accordingly. We are induced to make these remarks-by the appearance in this record of the testimony of witnesses given on the hearing of the motion for new trial below, which while we can not consider for the purposes of the motion when thus presented, having no-jurisdiction of the facts in criminal cases under the constitution, would, if we could consider them, induce us without a moment’s hesitation to set aside the verdict and sentence. It is not to be tolerated that jurors in a capital case, especially, should be allowed to walk about the streets for recreation at night and enter so public and exposed a place as a bar *1269 room or drinking-saloon, and there drink liquor ¡ or other beverage at the public counter. If such things are permitted all the labor and time spent in procuring the con-viction of criminals will go for naught and the ends of justice be defeated or delayed, while at the same time it will be impossible to preserve purity in its administration. We are compelled, however, to remind counsel that we can no more, under the constitution, take cognizance of the testimony of witnesses given on a motion for new trial in a criminal case than the evidence given on the trial itself, and tliat even when it comes before us in the record we can not consider it. See 3 An. 497; 2 An. 921; 1st H. D., p. 412, par. 6, and -cases cited. We can not pass upon the effect of evidence for any purpose in a criminal case; nor, unless the facts upon which the judge a quo bases his ruling in a matter of new trial are certified to us by him in a bill of exceptions, can we review that ruling, whether it related to misconduct of the jury or other grounds which involve the proof of facts .and evidence always more or less contradictory. Our province in such matters is simply to say what the law is upon a state <jf facts either .admitted by the State or certified to us regularly by the judge himself as those on which he based his own ruling. 2 An. 837, 838; 3 An. 497; (State vs. Brown, 4 An. 505; and again 1st H. D. p. 412, par. 6, and cases cited.
It is therefore ordered and decreed that the verdict and sentence appealed from be and they are affirmed.